**SEWARD & KISSEL LLP**
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Counsel for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JKL Digital Capital Limited,[1] <br><br> Debtor in a Foreign Proceeding. | Chapter 15 <br><br> Case No. 25-12250-pb |

**MOTION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING,**
**(II) RECOGNITION OF FOREIGN REPRESENTATIVES, AND**
**(III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

In accordance with the requirements of Rules 1007(a)(4) and 7007.1 of the Federal Rules

of Bankruptcy Procedure, Hadley Chilton, Stephen Cork, and Glenn Harrigan, in their capacities

as the foreign representatives (the "Foreign Representatives") of JKL Digital Capital Limited (the

"Debtor"), which is the respondent in a foreign proceeding in the British Virgin Islands (the

"Foreign Proceeding") pursuant to Section 159 of the BVI Insolvency Act, 2003 (the "BVI

Insolvency Act"), filed before the Eastern Caribbean Supreme Court in the High Court of Justice

Virgin Islands, Commercial Division (the "BVI Court"), have commenced the above-captioned

chapter 15 case (this "Chapter 15 Case") ancillary to the Foreign Proceeding and submit this

motion (this "Recognition Motion," and together with the verified chapter 15 form petition (the

---

[1] The chapter 15 Debtor along with the last four digits of the Debtor's business number is JKL Digital Capital Limited (4314). The Debtor's registered office is located at 80 Main Street, P.O. Box 3200, Road Town, Tortola VG 1110 Virgin Islands, British.

"Verified Petition") filed simultaneously herewith, the "Petition for Recognition") for recognition of the Foreign Proceeding as a "foreign main proceeding" and related relief pursuant to sections 105(a), 362, 1504, 1507, 1515, 1517, 1520, and 1521 of title 11 of the United States Code (the "Bankruptcy Code").    In further support of the Petition for Recognition, the Foreign Representatives have filed contemporaneously herewith (a) the *Declaration of Foreign Representative Pursuant to 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure and in Support of Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Foreign Representative Declaration" or "Decl.") and (b) the *Motion Requesting Scheduling* (the "Scheduling Motion"), which are both incorporated herein by reference, and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Debtor is an investment advisor that provided management and custodial services since at least 2021.  Pursuant to certain custodial and investment agreements, the Debtor received client digital assets and earned performance fees based on its investment of those assets in foreign and domestic cryptocurrency exchanges (the "Exchanges").

2.      On January 20, 2025, the BVI Court appointed the Foreign Representatives as joint and several liquidators of the Debtor.  The Foreign Representatives have reason to believe that the Debtor invested more than $300 million of its assets under management in various Exchanges, including at Coinbase Institutional ("Coinbase"), FTX Trading Ltd. ("FTX"), and Celsius Network ("Celsius"), as well as others.  The Debtor's current and former directors (the "Directors"), however, have refused to produce the books and records necessary to allow the Foreign

Representatives to locate such assets in order to determine what steps should be taken to recover such assets for the benefit of the Debtor's estate.

3.      The Foreign Representatives have alerted the Exchanges as to the existence of the Foreign Proceeding and sent them information requests directly, but certain Exchanges, such as Coinbase, have refused to provide any information in the absence of a properly served subpoena issued by a U.S. court.  Accordingly, to identify and safeguard the Debtor's assets, and consistent with the purpose of chapter 15 of the Bankruptcy Code, the Foreign Representatives seek recognition of the Foreign Proceeding as a foreign main proceeding under sections 1515 and 1517 of the Bankruptcy Code, application of the automatic stay with respect to any U.S. assets, and discretionary relief in the form of narrowly-tailored discovery aimed at U.S. based Exchanges and financial institutions that the Foreign Representatives believe, in good faith, may house the Debtor's assets.  As explained below, all of the requirements for recognition under chapter 15 of the Bankruptcy Code are satisfied and the relief requested herein is necessary and appropriate.

## **JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.) (the "Amended Standing Order").

5.      The Chapter 15 Case has been properly commenced pursuant to section 1504 of the Bankruptcy Code.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

6.      Venue in the Southern District of New York is proper pursuant to 28 U.S.C. § 1410(1) or, alternatively, § 1410(3).

7.     The statutory bases for the relief requested herein are sections 105(a), 362, 1504, 1507, 1515, 1517, 1520, and 1521 of the Bankruptcy Code, and Rule 9013-1(a) of the Local Rules for the Southern District of New York (the "Local Rules").

## RELIEF REQUESTED

8.     The Foreign Representatives request that this Court enter an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") that provides, among other things, the following relief:

    a.  Recognition of the Foreign Proceeding as a foreign main proceeding (as defined in section 1502(4) of the Bankruptcy Code);

    b.  Recognition of each of the Foreign Representatives as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Foreign Proceeding;

    c.  Application of all of the relief set forth in section 1520 of the Bankruptcy Code, including, without limitation, the protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the Debtor and to the Debtor's property that is within the territorial jurisdiction of the United States;

    d.  Authority, consistent with section 1521(a)(4) of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rule, to issue a subpoena to any U.S.-based Exchange (or successor-in-interest thereto) or financial institution seeking (i) the production of documents within its possession, custody, or control that are responsive to requests substantially in the form as those set forth in Exhibit 1 and Exhibit 2 to the Proposed Order (the "Requests for Production") and (ii) the examination of persons and entities (each a "Witness" and collectively, the "Witnesses") that may have information relevant to the Foreign Representatives' investigation or the Requests for Production; and

    e.  Such other and further relief as the Court deems just and proper.

## BACKGROUND

**A.     General Background and History**

9.     The Debtor is an exempted company incorporated in the British Virgin Islands with limited liability.  Its registered office is in the British Virgin Islands.

10.     On May 28, 2021, the Debtor and Unifi Group Limited ("Unifi") entered into two agreements: an Investment Advisory Agreement (the "Investment Agreement") and a Custodial Services Agreement (the "Custodial Agreement," and collectively with the Investment Agreement, the "Agreements").  The Investment Agreement generally provided that the Debtor could enter into investment transactions on Unifi's behalf and provide attendant advisory services in accordance with certain agreed upon investment objectives, and the Custodial Agreement provided for the manner by which the Debtor would exercise custody services over the investment assets, which generally consisted of digital assets.

11.     On June 29, 2021, the Agreements were duly novated to TGT, LP.  TGT, LP is an exempted limited partnership established under the Cayman Islands Exempted Limited Partnerships Act (the "ELPA") with its registered office at P.O. Box 309, Ugland House, Grand Cayman, KY1-104, Cayman Islands and is the only known creditor of the Debtor.[2]

12.     As set forth more fully below, on December 6, 2024, TGT, GP, general partner of TGT, LP, commenced the Foreign Proceeding in the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division).

**B.    Events Leadings to the Foreign Proceeding**

13.     Over the course of the Agreements, Unifi and TGT, LP transferred digital assets to the Debtor for the purposes of investment advice, management, and custody as per the terms of the Agreements.  The Debtor periodically provided financial statements regarding its investment activities to TGT, LP and paid itself performance fees from the client assets under management. The financial statements provided by the Debtor concealed the true extent of the Debtor's investment activity, which had resulted in millions of dollars in losses at various Exchanges.

---

[2] TGT, GP, is authorized under the ELPA, among other things, to issue voluntary liquidation proceedings on behalf of TGT, LP.

14.    On July 22, 2024, Stephen Cork and Hadley Chilton were appointed as joint voluntary liquidators of TGT, LP.  On October 8, 2024, Stephen Cork and Hadley Chilton were also appointed as joint voluntary liquidators of TGT, GP (together, the "TGT Liquidators").  Throughout their appointment, the TGT Liquidators investigated the transfer of assets from TGT, LP to the Debtor as well as the Debtor's transfer of such assets to third parties, including the Exchanges.  The investigation revealed that the Debtor purported to manage assets in excess of $300 million and that the Debtor routinely transacted with numerous Exchanges.  Certain of these Exchanges remain operative, such as Coinbase, while others fell victim to the "crypto winter," such as Celsius, which commenced chapter 11 bankruptcy cases in the U.S. Bankruptcy Court for the Southern District of New York in July 2022 (the "Celsius Proceedings") and FTX, which was placed into liquidation proceedings in the Bahamas and chapter 11 bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Delaware in November 2022 (the "FTX Proceedings").

**C.    The Foreign Proceeding**

15.    On December 6, 2024, TGT, GP, of behalf of TGT, LP, filed an application (the "Originating Application") in the BVI Court to appoint joint and several liquidators over the Debtor.

16.    On December 19, 2024, TGT, GP, on behalf of TGT, LP, filed an emergency application (the "Provisional Application") to appoint provisional joint liquidators over the Debtor because of distributions to claimholders set to commence imminently in the FTX Proceedings.  On December 27, 2024, the BVI Court approved Provisional Application and appointed Hadley Chilton, Stephen Cork, and Glenn Harrigan as joint provisional liquidators (the "Joint Provisional Liquidators") of the Debtor.

17.     At an uncontested hearing on January 20, 2025, the BVI Court approved the Originating Application and appointed Hadley Chilton, Stephen Cork, and Glenn Harrigan as joint and several liquidators (the "<u>Joint Liquidators</u>") of the Debtor.  The final order was subsequently issued by the BVI Court on February 4, 2025 (the "<u>Final Approved Order</u>").  The Final Approved Order, a true and correct copy of which is annexed as Exhibit A to the Verified Petition, authorized the Joint Liquidators, among other things, to:

     a.      Pay any class of creditors in full;

     b.      Make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the Debtor, whether present or future, certain or contingent, ascertained or not;

     c.      Commence, continue, discontinue, or defend any action or other legal proceedings in the name and on behalf of the Debtor;

     d.      Carry on the business of the Debtor so far as may be necessary for its beneficial liquidation;

     e.      Sell or otherwise dispose of property of the Debtor;

     f.      Do all acts and execute, in the same and on behalf of the Debtor, any deeds, receipts or other document;

     g.      Prove rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against their estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and ratably with the other separate creditor; and

     h.      Appoint a solicitor, accountant or other professionally qualified person to assist them in the performance of their duties.

18.     On September 30, 2025, the BVI Court authorized the Joint Liquidators to apply to the Bankruptcy Court for the Southern District of New York for recognition of the Foreign Proceeding as either a "main" or "non-main" proceeding pursuant to chapter 15 of the Bankruptcy Code.

### D.    The Directors' Lack of Cooperation

19.    The Joint Liquidators have only obtained limited records from the Debtor's BVI registered agent, JTC Group.  Such records consist of the Debtor's organizational and governing documents, which are insufficient to fully identify the Debtor's assets, creditors, affiliates, or relevant transactions.

20.    The Foreign Representatives have filed numerous information requests with the Directors, seeking to identify the scope of the Debtor's assets, creditors, and transactions involving the Exchanges.  The Directors, however, have not complied with such requests—notwithstanding their obligations to do so under the BVI Insolvency Act.

21.    Based on their investigation, the Foreign Representatives have reason to believe that the Debtor, including through the Directors, managed assets in excess of $300 million.  Upon information and belief, the Debtor, or its affiliated persons or entities, may have (i) cryptocurrency mining operations located in Texas, (ii) a right to recover on claims filed in certain bankruptcy proceedings related to the Exchanges, including but not limited to the FTX Proceedings and the Celsius Proceedings, (iii) assets held at other U.S. based Exchanges, including but not limited to Coinbase, and (iv) monies that appear to have passed through or are held by U.S. banks.  The existence and scope of these U.S. assets, however, has not been verified.

22.    The Foreign Representatives have alerted the Exchanges as to the existence of the Foreign Proceeding and sent them information requests directly, but certain Exchanges, such as Coinbase, have refused to provide any information in the absence of a properly served subpoena issued by a U.S. court.

23.     The only known U.S. asset of the Debtor is the Debtor's retainer of $10,000 (the "Retainer") held in Seward & Kissel LLP's central bank account ending 7720 at Citibank, N.A. located in the borough of Manhattan, New York.

## BASIS FOR RELIEF REQUESTED

I.     **The Debtor is Eligible for Chapter 15 Relief and Recognition of the Foreign Proceeding is Appropriate**

24.     The purposes of chapter 15 include protecting and maximizing a debtor's assets and ensuring the "fair and effective administration of cross-border insolvencies that protects the interests of all creditors, and interested entities, including the debtor." 11 U.S.C. § 1501(a). Consistent with these principles, as provided in the Foreign Representative Declaration, the Foreign Representatives commenced this Chapter 15 Case with the ultimate goal of giving effect in the United States to the Foreign Proceeding so that they can ascertain and safeguard the Debtor's U.S. assets.

25.     To be eligible for chapter 15 relief, a debtor must meet the general eligibility requirements under section 109(a) of the Bankruptcy Code as well as the more specific eligibility requirements under section 1517(a) of the Bankruptcy Code. As demonstrated below, the Debtor meets all eligibility requirements, and the relief sought herein is appropriate.

A.     **The Section 109(a) Requirements are Satisfied**

26.     Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor under this title." 11 U.S.C. §109(a). The Second Circuit Court of Appeals has applied section 109(a) of the Bankruptcy Code to chapter 15 eligibility. *See Drawbridge Special Opp. Fund LP v. Barnett (In re Barnett)*, 737 F.3d 238, 247 (2d Cir. 2013).

9

27.      Section 109(a) of the Bankruptcy Code does not require a specific quantum of property in the United States, nor does it indicate when or for how long such property must have a U.S. situs.  *See, e.g.*, *In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015). Courts in this District have required that a debtor have only nominal property in the United States to be eligible to file a chapter 15 case*.  See, e.g.*, *GMAM Inv. Funds Tr. I v. Globo Comunicacoes e Participacoes S.A. (In re Globo Comunicacoes e Participacoes S.A.)*, 317 B.R. 235, 249 (S.D.N.Y. 2004) ("For a foreign corporation to qualify as a debtor under Section 109, courts have required only nominal amounts of property to be located in the United States, and have noted that there is 'virtually no formal barrier' to having federal courts adjudicate foreign debtors' bankruptcy proceedings.") (citation omitted).  Accordingly, courts have held that bank accounts, attorney retainers, contract rights, or causes of action owned by a foreign debtor with a situs in the United States satisfy the "property in the United States" eligibility requirement of section 109(a).  *See, e.g., In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 372-73 (Bankr. S.D.N.Y. 2014) (noting the "line of authority that supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States," and holding that cash in a client trust account maintained by United States counsel to the foreign representative satisfied section 109(a)); *In re Suntech Power Holdings Co.*, 520 B.R. 399, 413-16 (Bankr. S.D.N.Y. 2014) (holding that a New York bank account over which chapter 15 debtor possessed power to direct disbursement of funds was property sufficient to establish eligibility for chapter 15 case in New York).

28.      Here, the Debtor's only known property located in the United States is the Retainer held in a New York bank account.  *See* Decl. ¶ 21.  As discussed above, the Debtor may also have additional property in the United States, which the Requests for Production are designed to

uncover.  Notwithstanding the potential existence of additional property in the United States, the

Debtor's interest in the Retainer located in New York is sufficient to satisfy the eligibility

requirements of section 109(a) of the Bankruptcy Code.

**B.**     **Venue is Proper in this District Under 28 U.S.C. § 1410(1), or Alternatively, 28 U.S.C. § 1410(3)**

29.     Section 1410 of title 28 of the U.S. Code provides that:

> [a] case under chapter 15 of title 11 may be commenced in the district court of the United States for the district (1) in which the debtor has its principal place of business or principal assets in the United States; (2) if the debtor does not have a place of business or assets in the United States, in which there is pending against the debtor an action or proceeding in a Federal or State court; or (3) in a case other than those specified in paragraph (1) or (2), in which venue will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative.

28 U.S.C. § 1410.

30.     As set forth above, the Debtor's only known asset in the United States as of the

commencement of the Foreign Proceeding and the date hereof is located in this District.

Alternatively, to the extent it is subsequently confirmed that the Debtor has assets on certain

Exchanges or mining operations in Texas, venue in this District would still be consistent with the

interests of justice and convenience of the parties under section 1410(3) of the Bankruptcy Code

given the breadth of well-developed authority in this jurisdiction and the fact that the Foreign

Representatives' counsel is based here.  *See In re Suntech*, 520 B.R. at 422-23 (citations omitted)

(holding that the most important factor in the interests of justice analysis is "the economic and

efficient administration of the estate" and that "[c]onvenience of the parties generally involves

consideration of the location of the parties and their counsel").

31.     Accordingly, the Debtor meets the requirements of 28 U.S.C. § 1410 to establish

venue in the Southern District of New York.

### C.     The Section 1517(a) Requirements Are Satisfied

32.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, "an order recognizing a foreign proceeding shall be entered if . . . (1) such foreign proceeding for which recognition is sought is a foreign main proceeding . . . within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." *See* 11 U.S.C. § 1517(a).  As explained below, the Foreign Proceeding, the Foreign Representatives, and the Petition for Recognition each satisfy the foregoing requirements.

#### *(i)     The Foreign Proceeding Qualifies as a Foreign Proceeding*

33.     The Foreign Proceeding is a foreign proceeding as defined under section 101(23) of the Bankruptcy Code.  Section 101(23) requires that a "foreign proceeding" be (i) a collective judicial or administrative proceeding relating to insolvency or adjustment of debt; (ii) pending in a foreign country; and (iii) under the supervision of a foreign court, for the purpose of reorganizing or liquidating the assets and affairs of the debtor.  *See* 11 U.S.C. § 101(23).  The statute defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3).

34.     Courts have held that a foreign representative seeking recognition of a "foreign proceeding" must prove that such proceeding is:

    a.   either judicial or administrative;

    b.   collective in nature;

    c.   in a foreign country;

    d.   authorized or conducted under a law related to insolvency or the adjustment of debts;

    e.   one in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and

12

f.    for the purpose of reorganization or liquidation.

*See In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (citing *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)); *see also In re Overnight and Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 532-33 (Bankr. S.D.N.Y. 2008) (discussing factors).

35.    The Foreign Proceeding satisfies each of the foregoing requirements: it is a judicial liquidation proceeding pending before and being supervised by the BVI Court under the BVI Insolvency Act, which authorizes the Foreign Representatives to maintain the value of the Debtor's business and liquidate its assets, if any, for the collective benefit of its creditors.  Courts in this District routinely recognize British Virgin Islands insolvency proceedings pending under the BVI Insolvency Act as "foreign proceedings" under section 101(23) of the Bankruptcy Code.  *See, e.g.*, *In re Cinque Terre Fin. Grp., Ltd.*, Case No. 16-11086, Dkt. No. 104 (Bankr. S.D.N.Y. June 26, 2016) (recognizing British Virgin Islands liquidation proceeding pursuant to the BVI Insolvency Act as a foreign main proceeding); *In re Olinda Star Ltd.*, Case No. 20-10712, Dkt. No. 23 (Bankr. S.D.N.Y. Apr. 3, 2020) (same); *In re Fairfield Sentry Ltd.*, Case No. 10-13164, Dkt. No. 47 (Bankr. S.D.N.Y. July 22, 2010) (same).

36.    Accordingly, the Foreign Proceeding qualifies as a "foreign proceeding" for purposes of section 101(23) of the Bankruptcy Code.

> (ii)    *The Proceeding is a "Foreign Main Proceeding" Under Section 1502 of the Bankruptcy Code*

37.    The Foreign Proceeding also qualifies as a "foreign main proceeding."  Under section 1502 of the Bankruptcy Code, the term "foreign main proceeding" means "a foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).  Section 1516 of the Bankruptcy Code establishes a rebuttable presumption that a debtor's registered office is the debtor's center of main interests.  *See* 11 U.S.C. § 1516(c).  When

considering a debtor's center of main interests, courts may also look to the location of those who actually manage the debtor. *See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 130 (2d Cir. 2013).

38.     An analysis of these factors supports a determination that the Debtor's center of main interests is the British Virgin Islands. The Debtor is incorporated in the British Virgin Islands and maintains its registered officer there. Decl. ¶ 7. One of the Foreign Representatives—who was empowered by the Final Approved Order to carry on the business of the Debtor and to do all acts so far as may be necessary on behalf of the Debtor—resides in the British Virgin Islands. *Id.* ¶ 3. Additionally, at least one of the Agreements between the Debtor and its only known creditor is governed by the laws of the British Virgin Islands. *Id.* ¶ 8.

### (iii)    The Foreign Representatives are Individual Persons

39.     Section 1517(a) of the Bankruptcy Code also mandates that the petitioner applying for recognition must be a foreign representative that is a person or body. 11 U.S.C. § 1517(a)(2). "Foreign representative" is defined in the Bankruptcy Code as follows: a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding. 11 U.S.C. § 101(24). The term "person" means any "individual, partnership, and corporation" that is not a governmental unit. 11 U.S.C. § 101(41).

40.     Here, the Foreign Representatives are each an individual person who was appointed as a Joint Liquidator to administer the liquidation of the Debtor in the Foreign Proceeding pursuant to the Final Approved Order. Thus, the Chapter 15 Case will be commenced by duly appointed foreign representatives within the meaning of the Bankruptcy Code.

*(iv)    The Petition for Recognition Meets the Requirements of Section 1515 of the
Bankruptcy Code and Bankruptcy Rule 1007(a)(4)*

41.    This Chapter 15 Case was duly and properly commenced by filing the Petition for
Recognition accompanied by all fees, documents, and information required by the Bankruptcy
Code and the Bankruptcy Rules, including: (a) a corporate ownership statement containing the
information described in Bankruptcy Rule 7007.1; (b) a list containing (i) the names and addresses
of all persons or bodies authorized to administer foreign proceedings of the Debtor, (ii) all parties
to litigation pending in the United States in which the Debtor is a party at the time of the filing,
and (iii) all entities against whom provisional relief is being sought under section 1519 of the
Bankruptcy Code; (c) a statement identifying all foreign proceedings with respect to the Debtor
that are known to the Foreign Representatives; and (d) a certified copy, in English, of the Final
Appointment Order, which commenced the Foreign Proceeding on a final basis and appointed the
Foreign Representatives.

42.    For the reasons set forth above, the Foreign Representatives respectfully submit
that each of the section 1517(a) requirements has been satisfied and, thus, the entry of an order
recognizing the Foreign Proceeding as a foreign main proceeding is proper.

**II.    Discretionary Relief Pursuant to Section 1521 is Necessary and Appropriate**

43.    Upon recognition of a foreign proceeding, section 1521(a) of the Bankruptcy Code
authorizes a court to grant "any appropriate relief" at the request of the recognized foreign
representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets
of the debtor or the interests of the creditors," including "providing for the examination of
witnesses, the taking of evidence or the delivery of information concerning the debtor's assets,
affairs, rights, obligations or liabilities."  11 U.S.C. 1521(a)(4).

44.     Similarly, section 1507(a) of the Bankruptcy Code provides that, "if recognition is granted," a court "may provide additional assistance to a foreign representative under this title or under other laws of the United States." 11 U.S.C. § 1507(a). Finally, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

45.     Courts have held that section 1521(a)(4) "enables a [f]oreign [r]epresentative to take broad discovery concerning the property and affairs of a debtor." *In re Millennium Global Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012). Section 1521(a)(4) also permits "discovery [that] relates to potential causes of action the [foreign representative] may assert," which are "contingent property interests of the debtor . . ." *Id.*

46.     Bankruptcy Rule 2004 complements the rights under section 1521(a)(4) and provides a procedural mechanism to obtain subpoenas. *See In re Glitnir banki hf.*, No. 08-14757 (SMB), 2011 Bankr. LEXIS 3296, at *20 (Bankr. S.D.N.Y. Aug. 19, 2011). "The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) (citation omitted). Thus, Rule 2004 can be used as a "pre-litigation discovery device." *In re Wilson*, 413 B.R. 330, 336 (Bankr. E.D. La. 2009). The Second Circuit has explained that the scope of inquiry permitted under a Rule 2004 examination is exceptionally broad. *Martin v. Schapp Moving Systems, Inc.*, Case No. 97-5042, 1998 U.S. App. LEXIS 15255, at *7 (2d Cir. Apr. 21, 1998) ("The very purpose of a Rule 2004 motion is to allow broad inquiry into the nature of the estate.").

47.     Discovery under section 1521(a)(4) and Rule 2004 is warranted here, particularly in light of the lack of cooperation by certain Exchanges, such as Coinbase, which have expressly

16

stated that formal document subpoenas are a condition precedent to cooperation. *See* Decl. ¶ 20. Such Discovery will also allow the Foreign Representatives to confirm whether the Debtor may have used U.S. based financial institutions to store and transfer its assets, including to the Exchanges.

48.    The documents sought in the Requests for Production are narrowly tailored and necessary for the Foreign Representatives to identify and safeguard the Debtor's assets in furtherance of its obligations under the Final Approved Order. The Requests for Production and related authority to examine Witnesses will enable the Foreign Representatives to discover assets that may be available to pay debts due and owing to the Debtor and, as necessary, seek standing or otherwise bring legal action in the appropriate jurisdiction to recover any assets for the benefit of the Debtor's estate.

## CONCLUSION

49.    The Foreign Representatives respectfully submit that the Petition for Recognition satisfies the requirements for the recognition of the Foreign Representatives as the Debtor's "foreign representative," the Foreign Proceeding as a "foreign main proceeding," and the discretionary relief described herein is necessary and appropriate.

## NOTICE

50.    The Foreign Representatives will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(c). The Foreign Representatives propose to notify any known creditors and parties in interest of the filing of the Petition for Recognition and the Foreign Representatives' request for entry of the Proposed Order in the form and manner set forth in the Scheduling Motion filed contemporaneously herewith. The Foreign Representatives submit that, in view of the facts and circumstances, such notice is sufficient, and no other or further notice need be provided.

## NO PRIOR REQUEST

51.     No prior request for the relief sought in this Petition for Recognition has been made

to this or any other court.

WHEREFORE, the Foreign Representatives respectfully requests entry of an order,

substantially in the form of the Proposed Order, granting the relief requested herein and such other

and further relief as is just and proper.


Dated:  October 10, 2025                              Respectfully submitted,
        New York, New York

                                        */s/ Robert J. Gayda*_____
                                        Robert J. Gayda, Esq.
                                        Catherine V. LoTempio, Esq.
                                        Andrew J. Matott, Esq.
                                        **SEWARD & KISSEL LLP**
                                        One Battery Park Plaza
                                        New York, NY 10004
                                        Telephone: (212) 574-1200
                                        Facsimile: (212) 480-8421
                                        Email:  gayda@sewkis.com
                                                lotempio@sewkis.com
                                                matott@sewkis.com


                                        *Counsel for the Foreign Representatives*

**<u>EXHIBIT A</u>**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JKL Digital Capital Limited,[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 25-12250-pb |

**[PROPOSED] ORDER GRANTING MOTION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING, (II) RECOGNITION OF FOREIGN REPRESENTATIVES, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE**

Upon review and consideration of the (i) *Motion for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "Recognition Motion"[2] and, together with the chapter 15 petition filed for the Debtor, the "Petition for Recognition"), (ii) the Foreign Representative Declaration, and (iii) the Scheduling Motion filed by Hadley Chilton, Stephen Cork, and Glenn Harrigan in their capacities as the foreign representatives (the "Foreign Representatives") of JKL Digital Capital Limited (the "Debtor"), which is the respondent in a foreign proceeding in the British Virgin Islands (the "Foreign Proceeding") pursuant to Section 159 of the BVI Insolvency Act, 2003, before the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands (Commercial Division); and upon the hearing on the Petition for Recognition (the "Hearing"); and appropriate and timely notice of the filing of the Petition for Recognition and the Hearing thereon having been given pursuant to section 1514 of the Bankruptcy Code; and such notice having been

---

[1] The chapter 15 Debtor along with the last four digits of the Debtor's business number is JKL Digital Capital Limited (4314). The Debtor's registered office is located at 80 Main Street, P.O. Box 3200, Road Town, Tortola VG 1110 Virgin Islands, British.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Recognition Motion.

adequate and sufficient for all purposes; and no other or further notice being necessary or required; and no objections or other responses having been filed; and all interested parties having had an opportunity to be heard at the Hearing; and after due deliberation and sufficient cause appearing therefore, the Court hereby finds and concludes:

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order.

B.      Venue is proper before this Court pursuant to 28 U.S.C. § 1410.

C.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

D.      This Court may enter a final order consistent with Article III of the United States Constitution.

E.      Appropriate notice of the filing of, and the Hearing on, the Petition for Recognition was given, which notice is deemed adequate for all purposes, and no other or further notice need be given.

F.      No objections or other responses were filed that have not been overruled, withdrawn, or otherwise resolved.

G.      The Debtor has a domicile, principal place of business, and/or property in the United States, and the Debtor is eligible to be a debtor in a chapter 15 case pursuant to, as applicable, 11 U.S.C. §§ 109 and 1501.

H.      The Foreign Representatives are each a "foreign representative" of the Debtor within the meaning of 11 U.S.C. § 101(24).

I.      This Chapter 15 Case was properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

J.      The Foreign Representatives are each a "person" pursuant to section 101(41) of the Bankruptcy Code and are each a duly appointed "foreign representative" of the Debtor as such term is defined in section 101(24) of the Bankruptcy Code.  The Foreign Representatives have satisfied the requirements of 11 U.S.C. § 1515 and Bankruptcy Rule 1007(a)(4).

K.      The Foreign Proceeding is a foreign proceeding within the meaning of 11 U.S.C. § 101(23).

L.      The Foreign Proceeding is entitled to recognition by this Court pursuant to 11 U.S.C. § 1517.

M.      The Foreign Proceeding is pending in the British Virgin Islands, the country where the Debtor's center of main interests is located, and therefore is a foreign main proceeding pursuant to 11 U.S.C. § 1502(4) and is entitled to recognition as a foreign main proceeding pursuant to 11 U.S.C. § 1517(b)(1).

N.      The Foreign Representatives are entitled to all of the relief afforded under 11 U.S.C. § 1520 and the additional relief requested and provided herein pursuant to 11 U.S.C. § 1521(a)(4).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Petition for Recognition is **GRANTED** as set forth herein.

2.      The Foreign Proceeding is recognized as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code and is entitled to the protections of 11 U.S.C. § 1520(a).

3.      Hadley Chilton, Stephen Cork, and Glenn Harrigan are each recognized as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Foreign Proceeding.

4.      The Debtor and the Foreign Representatives are granted all of the relief set forth in section 1520 of the Bankruptcy Code including, without limitation, the application of the

protection afforded by the automatic stay under section 362(a) of the Bankruptcy Code to the Debtor and to the Debtor's property that is within the territorial jurisdiction of the United States.

5.    The Foreign Representatives are authorized to operate the business of the Debtor that is the subject of the Foreign Proceeding and exercise the powers of a trustee to the extent provided by 11 U.S.C. § 1520(a)(3).

6.    Pursuant to 11 U.S.C. 1521(a)(4) of the Bankruptcy Code and Bankruptcy Rules 2004 and 9016, the Foreign Representatives are authorized to issue a subpoena to:

a.    any U.S.-based Exchange (or success-in-interest thereto) seeking (i) the production of documents within its possession, custody, or control that are responsive to requests substantially in the form as those set forth in **Exhibit 1** to this Order (the "Exchange Request for Production") and (ii) the examination of Witnesses that may have information relevant to the Foreign Representatives' investigation or the Exchange Request for Production; and

b.    any U.S.-based financial institution seeking (i) the production of documents within its possession, custody, or control that are responsive to requests substantially in the form as those set forth in **Exhibit 2** to this Order (the "Bank Request for Production") and (ii) the examination of Witnesses that may have information relevant to the Foreign Representatives' investigation or the Bank Request for Production.

7.    The Foreign Representatives shall serve such subpoena(s) and a copy of this Order as required by Bankruptcy Rules 2004 and 9016.

8.    Nothing herein shall limit the rights of any party under applicable law to object to or oppose any subpoena the Foreign Representatives may serve.

9.      This Order is without prejudice to the Foreign Representatives' right to file further motions seeking additional documents and testimony pursuant to Bankruptcy Rule 2004(a) or any other applicable Bankruptcy Rules.

10.     No action taken by the Foreign Representatives, the Debtor, or their respective successors, agents, representatives, advisors, or counsel in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the Foreign Proceeding, this Order, this Chapter 15 Case, or any adversary proceeding herein, or any further proceeding commenced hereunder, shall be deemed to constitute a waiver of the rights or benefits afforded such persons under sections 306 and 1510 of the Bankruptcy Code.

11.     The Foreign Representatives are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

12.     This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any request for additional relief or any adversary proceeding brought in and through this Chapter 15 Case, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

13.     Notwithstanding Bankruptcy Rule 7062, made applicable to the Chapter 15 Case by Bankruptcy Rule 1018, the terms and conditions of this Order shall be effective and enforceable immediately upon its entry, and this Order shall become final and appealable.

Dated: New York, New York
       ___, 2025                          _____
                                          THE HONORABLE _____
                                          UNITED STATES BANKRUPTCY JUDGE

SK 39065 0002 11819229 v1

5

**<u>Exhibit 1</u>**

**Exchange Request for Production**

## **DEFINITIONS**

1.       "Affiliate" means Point95 Capital, JKL (2002) LTD., JKL Capital Limited, JKL Capital Investments Ltd, JKL Capital Management Limited, JKL Development Company Limited, JKL Digital Capital Group Limited, JKL Holdings Inc., JKL International Ltd., JKL Investments Ltd., JKL One Limited, JKL Professional Services Ltd, JKL Satori Trading Limited, JKLD Limited, JKLM Investments Limited, and Vulcan One Holdings Limited.

2.       "All," "each," and "any" shall be construed as encompassing any and all.

3.       "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.       "Company" means JKL Digital Capital Limited.

5.       "Communication(s)" means any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail over personal or business accounts, instant or text message over personal or business devices (including but not limited to SMS/MMS, iMessage, Skype, and WhatsApp), overnight delivery, telephone or facsimile.

6.       "Concerning," "regarding" or "relating to" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting on, comprising, concerning, confirming, considering, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, negating, negotiating, pertaining to, qualifying, referring to, regarding, relating to, relevant to, representing, revoking, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

7.       "Document(s)" means all writings, audio recordings and videos of any nature whatsoever (including, specifically, all drafts), whether originals or copies, including all non-identical copies (whether different from the original because of notes made on or attached to them or otherwise), whether drafts, preliminary, proposed or final versions, whether printed, recorded, produced or reproduced by any other mechanical or electronic process, whether written or produced by hand, within Your possession, custody or control, including without limitation, contracts, agreements, arrangements, understandings, Communications, correspondence, records, reports, studies, memoranda (including memoranda of telephone, personal or intra-office conversations and memoranda of conferences, notes, advertisements, notices, facsimile Communications), Phone Records, Videoconferencing Records, diaries, forecasts, accountants' work papers, graphs, summaries, lists, tabulations, charts, diagrams, blueprints, tables, indices, pictures, recordings, tapes, charges, accounts, minutes, press releases, stenographic, handwritten or any other notes, projections, working papers, checks, check stubs, receipts, or any other document or writings of whatever description, including, without limitation, e-mails, instant messages, text messages, ESI or other electronic chats or messages and any information contained in any computer or memory system, although not yet

printed out, or any material underlying, supporting or used in the preparation of any such documents.

8.      "ESI" or "Electronically Stored Information" means information or data that is generated, received, processed, and recorded by computers and other electronic devices, and includes, without limitation, system metadata (e.g., author, recipient, file creation date, file modification date) and user-generated metadata (e.g., spreadsheet formulas).  "ESI" further includes, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) message logs from Google Chat, AOL Instant Messenger, Facebook, Twitter, WhatsApp, Telegram, and similar programs, (iv) audio and video files, (v) internal (intranet) or external websites, and (vi) activity listings of electronic mail receipts and/or transmittals.  "ESI" includes electronic information or data wherever it resides, including, without limitation, (i) Facebook, Instagram or other social media, (ii) in an active file on a computer network, an individual computer's hard drive or in a Cloud storage facility, (ii) in a deleted file or file fragment, (iii) on backup/storage media, (iv) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive, and (v) on a smart phone or personal digital assistant.  "ESI" also includes Documents, containers and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

9.      "Former Director" means Cheung Ling, Ye Jingyuan or Wu Dong.

10.     "Current Director" means Huang (David) Tianrui.

11.     "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information to satisfy Federal Rule of Civil Procedure 33(d).

12.     "Including," "include," or "includes" shall mean "including, without limitation."

13.     "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

14.     "Phone Records" means all Documents, including telephone bills, recordings, transcripts, call summaries, telephone logs, and/or invoices for telephone conferencing services, that identify the date, time, duration, participants, telephone numbers, and/or proposed or actual subject matter of any telephone call.

15.     "Request" means any request for the production of documents set forth herein.

16.     "Videoconferencing Records" means all Documents, including bills, call or video summaries, transcripts, recordings, meeting logs, and/or invoices for conferencing services that identify the date, time, duration, participants, telephone numbers, planned or actual subject

2

matter, and any Documents uploaded and/or accessed through any videoconferencing call or service.

## **INSTRUCTIONS**

1. Unless otherwise indicated in a particular Request, the date range of these Requests shall be January 1, 2020 through the date of the response hereto.

2. Documents shall be produced as they have been kept in the ordinary course of business.  In this respect, the file folder in which the documents are contained is deemed an integral part of the document and shall also be produced.  You are specifically requested to produce any excel spreadsheets in native format.

3. The singular shall include the plural and the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive.

4. If any document is withheld, in whole or in part, on the basis of privilege, the producing party shall provide a proper privilege log at the time of the document production.

5. These Requests extend to all documents in a producing party's possession, custody and/or control, or in the possession, custody or control of persons or entities under the producing party's control, whether or not such documents were created or prepared by the producing party.  The terms "possession," "custody," and "control" mean possession, custody or control, or rights to possession, custody or control, of documents by producing party, including Documents in the possession of any attorneys, without limitation, and documents in the custody, possession or control of any of the producing party's accountants, advisers, representatives and/or other agents of same.

6. Each reference to a corporation, partnership, joint venture, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys and any other person who acted or purported to act on its behalf.

7. Each reference to a natural person shall be deemed to include that person's agents, attorneys, representatives and any other person who acted or purported to act on that person's behalf.

8. In responding to these Requests, which are continuing in nature, the producing party shall produce all responsive documents in their possession, custody and/or control and shall promptly supplement and/or correct its responses if the producing party comes into possession, custody or control of additional documents, or learns or determines additional information, after the service of its response.

9.      If, after a reasonable and thorough investigation using due diligence, the producing party is unable to furnish a document or part thereof because a document is not available to the producing party, the producing party shall provide a list of each document so lost, destroyed or otherwise unavailable, together with the following information: (a) date or origin; (b) brief description of such document; (c) author of the document; (d) date upon which the document was lost or destroyed; and (e) brief statement of the manner in which such document was lost or destroyed.

10.     Electronic data should be produced with all native files and metadata intact, in full-text searchable format. Any responsive, electronically stored data shall be converted/processed to TIFF files and Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files. Documents must be produced with load files necessary to load such documents onto Relativity. Images should be single-page TIFF files and file names cannot contain embedded spaces. The text and metadata of emails and the attachments, and native file document collections should be extracted and provided in a .DAT file. Searchable text of the entire document must be provided for every record, at the document level, and extracted text must be provided for documents that originated in electronic format.

11.     If there are no documents responsive to a category in this Request, so state in writing.

12.     The producing party shall follow all deadlines and procedures under applicable law. Objecting to a portion of a Request does not relieve the producing party of the duty to respond to those parts of the Request to which the producing party does not object.

## <u>REQUESTS</u>

1.      Documents sufficient to show the following information regarding accounts associated with the Company, any Affiliate, and/or any Current or Former Director:

   a.  Account identifiers such as user ID number, username, and email address;

   b.  The wallet addresses to which any cryptocurrency or other digital assets were sent from the accounts;

   c.  The wallet addresses from which any cryptocurrency or other digital assets were received into the accounts;

   d.  "Know Your Customer" information (including date of birth, street address, and government ID/pictures stored);

   e.  The date of the account's creation;

   f.  The associated customer/entity name;

g.  The date and time of each account login, as well as the IP address used for each login session;

h.  Transaction history for all accounts, including sub-accounts; and

i.  Balances for all accounts, including sub-accounts.

2.  Account statements associated with the Company, any Affiliate, and/or any Current or Former Director.

3.  Communications involving any account associated with the Company, any Affiliate, and/or any Current or Former Director, including but not limited to chat logs, emails, customer support tickets, and text messages.

4.  Documents sufficient to identify any wallet maintained by the Company, any Affiliate, and/or any Current or Former Director using your, or any of your affiliate's, exchange's software or other services.

## Exhibit 2

**Bank Request for Production**

**DEFINITIONS**

1.      "Affiliate" means Point95 Capital, JKL (2002) LTD., JKL Capital Limited, JKL Capital Investments Ltd, JKL Capital Management Limited, JKL Development Company Limited, JKL Digital Capital Group Limited, JKL Holdings Inc., JKL International Ltd., JKL Investments Ltd., JKL One Limited, JKL Professional Services Ltd, JKL Satori Trading Limited, JKLD Limited, JKLM Investments Limited, and Vulcan One Holdings Limited.

2.      "All," "each," and "any" shall be construed as encompassing any and all.

3.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.      "Company" means JKL Digital Capital Limited.

5.      "Communication(s)" means any exchange of information by any means of transmission, including, but not limited to, face-to-face conversations, mail, electronic mail over personal or business accounts, instant or text message over personal or business devices (including but not limited to SMS/MMS, iMessage, Skype, and WhatsApp), overnight delivery, telephone or facsimile.

6.      "Concerning," "regarding" or "relating to" means in any way, directly or indirectly, alluding to, amending, assisting with, canceling, commenting on, comprising, concerning, confirming, considering, contradicting, describing, discussing, endorsing, evidencing, identifying, incorporating, mentioning, modifying, negating, negotiating, pertaining to, qualifying, referring to, regarding, relating to, relevant to, representing, revoking, showing, suggesting, supplementing, supporting, terminating, underlying, or otherwise involving the subject matter of the specified request.

7.      "Document(s)" means all writings, audio recordings and videos of any nature whatsoever (including, specifically, all drafts), whether originals or copies, including all non-identical copies (whether different from the original because of notes made on or attached to them or otherwise), whether drafts, preliminary, proposed or final versions, whether printed, recorded, produced or reproduced by any other mechanical or electronic process, whether written or produced by hand, within Your possession, custody or control, including without limitation, contracts, agreements, arrangements, understandings, Communications, correspondence, records, reports, studies, memoranda (including memoranda of telephone, personal or intra-office conversations and memoranda of conferences, notes, advertisements, notices, facsimile Communications), Phone Records, Videoconferencing Records, diaries, forecasts, accountants' work papers, graphs, summaries, lists, tabulations, charts, diagrams, blueprints, tables, indices, pictures, recordings, tapes, charges, accounts, minutes, press releases, stenographic, handwritten or any other notes, projections, working papers, checks, check stubs, receipts, or any other document or writings of whatever description, including, without limitation, e-mails, instant messages, text messages, ESI or other electronic chats or messages and any information contained in any computer or memory system, although not yet

printed out, or any material underlying, supporting or used in the preparation of any such documents.

8.      "ESI" or "Electronically Stored Information" means information or data that is generated, received, processed, and recorded by computers and other electronic devices, and includes, without limitation, system metadata (e.g., author, recipient, file creation date, file modification date) and user-generated metadata (e.g., spreadsheet formulas).  "ESI" further includes, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) message logs from Google Chat, AOL Instant Messenger, Facebook, Twitter, WhatsApp, Telegram, and similar programs, (iv) audio and video files, (v) internal (intranet) or external websites, and (vi) activity listings of electronic mail receipts and/or transmittals.  "ESI" includes electronic information or data wherever it resides, including, without limitation, (i) Facebook, Instagram or other social media, (ii) in an active file on a computer network, an individual computer's hard drive or in a Cloud storage facility, (ii) in a deleted file or file fragment, (iii) on backup/storage media, (iv) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive, and (v) on a smart phone or personal digital assistant.  "ESI" also includes Documents, containers and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

9.      "Former Director" means Cheung Ling, Ye Jingyuan or Wu Dong.

10.     "Current Director" means Huang (David) Tianrui.

11.     "Identify" means (a) with respect to persons, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment; (b) with respect to documents, either (i) to give, to the extent known, the (A) type of document; (B) general subject matter; (C) date of the document; and (D) author(s), addressee(s) and recipient(s); or (ii) to produce the documents, together with sufficient identifying information to satisfy Federal Rule of Civil Procedure 33(d).

12.     "Including," "include," or "includes" shall mean "including, without limitation."

13.     "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

14.     "Phone Records" means all Documents, including telephone bills, recordings, transcripts, call summaries, telephone logs, and/or invoices for telephone conferencing services, that identify the date, time, duration, participants, telephone numbers, and/or proposed or actual subject matter of any telephone call.

15.     "Request" means any request for the production of documents set forth herein.

16.     "Videoconferencing Records" means all Documents, including bills, call or video summaries, transcripts, recordings, meeting logs, and/or invoices for conferencing services that identify the date, time, duration, participants, telephone numbers, planned or actual subject

matter, and any Documents uploaded and/or accessed through any videoconferencing call or service.

## <u>INSTRUCTIONS</u>

1.      Unless otherwise indicated in a particular Request, the date range of these Requests shall be January 1, 2020 through the date of the response hereto.

2.      Documents shall be produced as they have been kept in the ordinary course of business.  In this respect, the file folder in which the documents are contained is deemed an integral part of the document and shall also be produced.  You are specifically requested to produce any excel spreadsheets in native format.

3.      The singular shall include the plural and the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive.

4.      If any document is withheld, in whole or in part, on the basis of privilege, the producing party shall provide a proper privilege log at the time of the document production.

5.      These Requests extend to all documents in a producing party's possession, custody and/or control, or in the possession, custody or control of persons or entities under the producing party's control, whether or not such documents were created or prepared by the producing party.  The terms "possession," "custody," and "control" mean possession, custody or control, or rights to possession, custody or control, of documents by producing party, including Documents in the possession of any attorneys, without limitation, and documents in the custody, possession or control of any of the producing party's accountants, advisers, representatives and/or other agents of same.

6.      Each reference to a corporation, partnership, joint venture, unincorporated association, government agency or other fictitious person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors and successors, and with respect to each of such entities, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys and any other person who acted or purported to act on its behalf.

7.      Each reference to a natural person shall be deemed to include that person's agents, attorneys, representatives and any other person who acted or purported to act on that person's behalf.

8.      In responding to these Requests, which are continuing in nature, the producing party shall produce all responsive documents in their possession, custody and/or control and shall promptly supplement and/or correct its responses if the producing party comes into possession, custody or control of additional documents, or learns or determines additional information, after the service of its response.

3

9.      If, after a reasonable and thorough investigation using due diligence, the producing party is unable to furnish a document or part thereof because a document is not available to the producing party, the producing party shall provide a list of each document so lost, destroyed or otherwise unavailable, together with the following information: (a) date or origin; (b) brief description of such document; (c) author of the document; (d) date upon which the document was lost or destroyed; and (e) brief statement of the manner in which such document was lost or destroyed.

10.      Electronic data should be produced with all native files and metadata intact, in full-text searchable format.  Any responsive, electronically stored data shall be converted/processed to TIFF files and Bates numbered, and include fully searchable text.  Additionally, email and native file collections should include linked native files.  Documents must be produced with load files necessary to load such documents onto Relativity.  Images should be single-page TIFF files and file names cannot contain embedded spaces.  The text and metadata of emails and the attachments, and native file document collections should be extracted and provided in a .DAT file.  Searchable text of the entire document must be provided for every record, at the document level, and extracted text must be provided for documents that originated in electronic format.

11.      If there are no documents responsive to a category in this Request, so state in writing.

12.      The producing party shall follow all deadlines and procedures under applicable law. Objecting to a portion of a Request does not relieve the producing party of the duty to respond to those parts of the Request to which the producing party does not object.

## **REQUESTS**

1.      Documents sufficient to show the following information regarding any accounts maintained by You associated with the Company, any Affiliate, and/or any Current or Former Director:

  a.  Type of account(s);

  b.  Name, address, and contact information of each account holder or custodian;

  c.  "Know Your Customer" and "Anti-Money Laundering" information provided upon each account's opening (including date of birth, street address, and government identification);

  d.  The date of each account's opening; and

  e.  Account statements, including current balance and transaction history for each account.